Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2100 | **DATE** | 4/29/2004 |
| **CASE TITLE** | Larson vs. Bank One | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: Defendant's motion for summary judgment is granted in part and denied in part [105-1].**

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | APR 3 0 2004 |
| | Notified counsel by telephone. | date docketed |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| TSA | courtroom deputy's initials | date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 193

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE OLD BANC ONE SHAREHOLDERS SECURITIES LITIGATION | ) No. 00 C 2100 ) ) Wayne R. Andersen ) District Judge ) ) |


DOCKETED
APR 3 0 2004

## MEMORANDUM, OPINION AND ORDER

Before the Court is the motion of Defendants Bank One Corporation, John B. McCoy, Richard J. Lehmann, David J. Vitale, Verne G. Istock, Michael J. McMennamin, and William P. Boardman ("Defendants") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, the motion for summary judgment is granted in part and denied in part.

## BACKGROUND

The Old Banc One shareholders have brought this action against Defendant Bank One Corporation and six of its officers under Sections 12 and 15 of the Securities Act of 1933, 15 U.S.C. § 77l. The claims filed by the Old Banc One shareholders arise out of the October 2, 1998 merger of Banc One Corporation ("Old Banc One") and First Chicago NBD ("First Chicago") into Bank One. Prior to, and at the time of, the merger, Old Banc One allegedly represented that "one of the major strengths of its operations was the tremendous growth reported at its credit card division, First USA Bank, N.A." ("First USA"). The Old Banc One shareholders allege that certain documents filed in connection with the merger contained false and misleading statements regarding the earnings of Old Banc One's credit card subsidiary, First USA.

193

On September 30, 2002, this Court denied Lead Plaintiff Frank Villano's motion for class certification because we found that Villano did not adequately represent the class. Lead Plaintiff Villano filed a motion for reconsideration of our September 30, 2002 order, which we denied on October 30, 2002. Lead Plaintiff next filed an appeal to the Seventh Circuit, which was denied by the Seventh Circuit on December 18, 2002. Lead Plaintiff has subsequently proposed a new class representative, but has agreed to wait until resolution of the pending motion for summary judgment before pursuing appointment the new class representative and proposed certification of this action as a class action.

In their motion for summary judgment, Defendants argue that the Old Banc One shareholders cannot succeed on their claims for two reasons: 1) they have not suffered any loss or injury as a result of the merger; and 2) none of the alleged misrepresentations could have been material to the Old Banc One shareholders.

**I. The Mergers**

In February 1998, First Chicago and Old Banc One began discussing the possibility of a strategic combination of the companies. Subsequent discussions regarding the strategic combination included negotiations of the exchange ratio for First Chicago stock. If the companies merged, with Bank One as the surviving company, the First Chicago shareholders would have to exchange shares that historically traded above the market price of Old Banc One stock. From 1996 forward, the price of First Chicago common stock and declared dividends of First Chicago consistently exceeded the stock price and dividends of Old Banc One. The Exchange Ratio agreed to by the companies, 1 share of First Chicago stock to 1.62 shares of Bank One stock, resulted in Old Banc One shareholders having a fully diluted ownership interest of approximately 59.9% in the combined company.

Old Banc One and First Chicago entered into a formal agreement on April 10, 1998. Thereafter, on July 31,1998, Old Banc One and First Chicago filed a joint Registration Statement pursuant to the Securities Act, 15 U.S.C. § 77*f*. On August 5, 1998, both companies mailed to their respective shareholders a Joint Proxy Statement and Prospectus (the "Prospectus"). The Prospectus sets forth the reasons why the companies' respective boards of directors recommended their shareholders vote in favor of the merger. It also included summaries of the fairness opinions rendered by four different investment banks regarding the Exchange Ratio, as well as pro forma consolidated financial statements for the combined companies.

The Prospectus sent out as part of the merger, touted First USA, Old Banc One's credit card unit, as being one of Old Banc One's major assets. The Prospectus incorporated Old Banc One's 1997 Form 10-K, and 1998 First Quarter 10-Q, which reflected rapid quarterly growth by First USA.

On September 15, 1998, the merger was approved by both the Old Banc One and First Chicago shareholders. Ninety-eight percent of the Old Banc One shareholders voted to approve the merger, as did ninety-three percent of the First Chicago shareholders. The merger became effective on October 2, 1998. At the close of trading on October 2, 1998, Bank One's common stock price was $ 41.938 per share.

Prior to the merger, Bank One was a wholly-owned subsidiary of Old Banc One organized in 1998 under the laws of the State of Delaware to effect the merger. The merger was completed in two steps. In the first step on October 2, 1998, Old Banc One merged with and into Bank One, with Bank One being the surviving corporation. In connection with this step, each share of Old Banc One was automatically converted into one share of Bank One common stock.

Old Banc One shareholders did not need to exchange their shares. The conversion took place "without any action on the part" of the Old Banc One shareholders.

In the second step later that day, First Chicago merged with and into Bank One, with Bank One again being the surviving corporation. During the second step, each share of First Chicago was converted into the right to receive a number of shares of Bank One common stock equal to the Exchange Ratio of 1 to 1.62. Unlike the conversion for Old Banc One shareholders, whose stock simply changed names without a change in value, the value of the exchange for First Chicago shareholders was subject to fluctuation. Because the Exchange Ratio was fixed and because the market prices of Old Banc One (pre-first step) and Bank One (post-first step) were subject to fluctuation, the value of the shares of Bank One stock that holders of First Chicago stock were to receive could increase or decrease prior to the merger.

On August 24 1999, Bank One issued a press release which said that preliminary estimates of 1999 earnings would be down 7-8% from current market estimates, based entirely on recent changes in the growth and margin prospects for First USA, the Corporation's credit card unit. On August 25, 1999, Bank One announced that First USA would stop assessing late fees at the payments' due date and provide customers with a day's grace period before imposing late fees and would provide certain credit card customers rate concessions. Subsequent to Bank One's announcement, on August 25, 1999, Bank One common stock prices fell twenty percent to close at $ 43 per share and trading was fifteen times higher than its daily average trading volume.

## II. The Allegations Of The Complaint

The stock price drops led to a series of lawsuits being filed against Defendants. In this action, the Old Banc One shareholders allege that the Prospectus "recorded recognized and

4

reported significantly more fee and interest revenue than that to which it was entitled," because it included improperly booked income and revenue by First USA. The Old Banc One shareholders allege that the undisclosed violations of credit practices that occurred prior to, and at the time of, the Merger, as well as the allegedly false and misleading financial statements included in the Prospectus resulted in damages suffered by Old Banc One securities holders who received Bank One securities in the Merger.

The Old Banc One shareholders assert claims under Sections 12 and 15 of the Securities Act of 1933 on behalf of the Old Banc One shareholders who converted their shares into Bank One stock. The question presented by Defendants' summary judgment motion is whether recovery is available under Section 12 and Section 15 for a shareholder who acquired shares in Bank One Corporation by virtue of the exchange of the Old Banc One shares held by that shareholder.

## DISCUSSION

Summary judgment will be granted when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *O'Connor v. DePaul Univ.*, 123 F.3d 665, 669 (7th Cir. 1997). The movant must establish the absence of a genuine issue of material fact. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Summary judgment will be granted if the non-moving party fails to prove an essential element to its case, on which it will have the burden of proof at trial. *Celotex*, 477 U.S. at 322.

As the following analysis will explain, we hold that those former Old Banc One shareholders who purchased Old Banc One shares *before* Old Banc One allegedly began disseminating misstatements pertaining to its First USA credit card unit may not proceed with

their Section 12 and 15 claims in this action, but those former Old Banc One shareholders who purchased Old Banc One shares *during* the pre-merger period in which Old Banc One allegedly disseminated misstatements about First USA's performance may proceed with their Section 12 and 15 claims.

August 5, 1998 is the date on which Old Banc One and First Chicago mailed the Joint Proxy Statement and Prospectus to their respective shareholders. That Prospectus contained the allegedly false statements. Therefore, all former Old Banc One shareholders who purchased their shares on or before August 5, 1998 may not proceed with their claims in this action, while those shareholders who purchased after August 5, 1998 may proceed with their cause of action.

## I. Defining "Early-Purchasing" and "Late-Purchasing" Shareholders

We do not consider the Plaintiff class as alleged to be a homogeneous group with the same interests. In fact, we believe discovery has revealed that one group of Old Banc One shareholders has a cause of action in this case, while the other group has no viable cause of action. We find that the cut-off for cognizable claims occurred when the allegedly false statements pertaining to Old Banc One's First USA credit card unit were made or disseminated to the shareholders during the pre-merger period. The group of shareholders who purchased Old Banc One shares on or before August 5, 1998 when Old Banc One allegedly began disseminating misstatements pertaining to its First USA credit card unit will be referred to as the "early-purchasing" Old Banc One shareholders. The group of shareholders who purchased Old Banc One shares after August 5, 1998, during the pre-merger period in which Old Banc One allegedly disseminated misstatements about First USA's performance will be referred to as the "late-purchasing" Old Banc One shareholders. We grant Defendants' motion for summary judgment on the Section 12 and 15 claims filed by the early-purchasing Old Banc One

shareholders, and deny the motion as it applies to the Section 12 and 15 claims of late-purchasing Old Banc One shareholders.

**II. Analysis of the Claims**

A. Early-Purchasing Shareholders' Section 12 Claims

Section 12 of the Securities Act of 1933, 15 U.S.C. § 77l, provides that a person who offers or sells a security

> by use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements…shall be liable…to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security. 15 U.S.C. § 77l(a) (2003).

One of the required substantive elements of 15 U.S.C. § 77l is that the prospectus used by the defendant either contained "an untrue statement of material fact" or "omit[ted] a material fact necessary in order to make the statements." *See, e.g., Flannery v. Carroll*, 676 F.2d 126, 128 (5th Cir. 1982). Under federal securities laws, the seller of a security is only liable for misrepresentations or omissions as to facts that are material. *Acme Propane, Inc. v. Tenexco, Inc.*, 844 F.2d 1317, 1322 (7th Cir. 1988). Materiality is a mixed question of law and fact. *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976).

The Seventh Circuit has held that, in order to be material, a statement must significantly alter the total mix of information available to the investor. *Acme Propane*, 844 F.2d at 1322 (citing *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988) and stating, "'reliance' in securities law is just a code word for causation, which in turn usually means a material misstatement…"). One

district court has recently stated that, under Section 12, "[i]f a reasonable investor would not have been swayed by the information misrepresented or omitted, then the information is immaterial as a matter of law." *In re BankAmerica Corp. Securities Litigation*, 78 F. Supp.2d 976, 992 (E.D. Mo. 1999).

In this case, the early-purchasing Old Banc One shareholders cannot, as a matter of law, satisfy the material fact element of Section 77l because, even if it can be proven that the Bank One Prospectus contained "untrue statements," such misstatements could not have been material to the early-purchasing Old Banc One shareholders. This Court has previously noted that, "[i]f plaintiffs in the First Chicago case succeed, then the First Commerce/Old Banc One shareholders could not have been injured because if one side of the merger received more value than its contribution to the combined company warranted, then the other side received less value than it was entitled to." *Levitan v. McCoy*, 2003 U.S. Dist. LEXIS 5078 at *16 (N.D. Ill. 2003).

On October 2, 1998, when the Old Banc One shares were exchanged for shares in new Bank One Corporation, the early-purchasing Old Banc One shareholders realized an artificial gain on the value of their Old Banc One shares. This gain was directly caused by, and attributable to, the alleged misstatements about First USA's performance. In other words, the rate of exchange of Old Banc One shares for new Bank One shares was artificially inflated as a result of the alleged misstatements. That the early-purchasing Old Banc One shareholders later suffered a loss upon disclosure of previously misstated financial information is of no significance since the magnitude of this later loss was less than the gain the early-purchasing shareholders realized at the time of the merger. *Cf. In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 347 (S.D.N.Y. 2003) (assessing and ultimately rejecting plaintiff's claim under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, stating, "[i]f a plaintiff has no

8

conceivable damages under Section 11, she cannot state a claim upon which relief can be granted and her Section 11 claims must be dismissed."). Early-purchasing Old Banc One shareholders derived a benefit by reason of the Bank One Prospectus alleged misstatements, since such misstatements allowed them to realize gains they would not have otherwise realized.

Moreover, the information allegedly concealed from the Old Banc One shareholders concerned the financial performance of one of Old Banc One's business units-- First USA-- and not one of First Chicago's business units. Had the truth of the alleged misstatements in the Prospectus been disclosed, the "total mix of information" available to the early-purchasing Old Banc One shareholders about the attractiveness of First Chicago as a merger partner would not have been altered. In a similar case, the District Court for the Northern District of California considered claims brought under Section 11 of the Securities Act of 1933 by former shareholders of HBO & Company ("HBOC"). In that case, the Court stated:

> If the true facts were disclosed prior to the merger, the market presumably would have acted rationally and discounted the shares to correct the previous inflation. At that point, HBOC shareholders could have sold their shares into a depressed market, or they could have approved the merger, which because of its fixed exchange ratio, would only be more favorable with each drop in HBOC's trading price. There is simply not a substantial likelihood that a reasonable investor would have difficulty deciding which course of action to take. The misstatements were therefore immaterial.

*In re McKesson HBOC, Inc. Securities Litigation*, 126 F. Supp.2d 1248, 1261 (N.D. Cal. 2000).

Pre-merger disclosure of the information would have made the early-purchasing Old Banc One shareholders even more likely to approve the merger due to the fixed nature of the Exchange Ratio. Pre-merger disclosure certainly would have affected Old Banc One

9

shareholders' view of the value of their own Old Banc One stock, but it would not have "swayed" such shareholders against approving the merger.

The Ninth Circuit recently held that "there can be no recovery [of damages under Section 12] unless the purchaser has suffered a loss." *In re Broderbund*, 294 F.3d 1201, 1205 (9th Cir. 2002) (finding that plaintiff could not demonstrate damages subsequent to a stock-for-stock merger when he received consideration valued at $33.45 per share in such merger, and when he had originally received his shares less than a year before in exchange for stock valued at $17.85 per share). Eight years prior to *Broderbund*, the District Court for the District of Maryland held that a plaintiff who sold the securities at issue for an amount greater than the plaintiff's purchase price suffered no damages recoverable under Section 12. *PPM Am. v. Marriott Corp.*, 853 F. Supp. 860, 876 (D.Md. 1994).

The principle that "there can be no recovery unless the purchaser has suffered a loss," as stated explicitly in *Broderbund* and implicitly in *PPM Am.*, cannot be applied meaningfully to the instant matter. On the one hand, the early-purchasing Old Banc One shareholders did, at two discrete points in time (after the August 24, 1999 and November 10, 1999 disclosures of new information about the First USA unit's financial performance), nominally "suffer a loss": specifically, loss due to the drop in new Bank One's share price. However, as discussed *supra*, assessed over the period from when Old Banc One and First Chicago set the exchange rate for Old Banc One shares through November 1999, the early-purchasers experienced no loss as a result of the absence of disclosure at the time of the merger regarding First USA's performance.

For these reasons, the alleged misstatements could not have been material to the early-purchasing Old Banc One shareholders, and they cannot articulate any cognizable damages

10

under Section 12. Therefore, we grant Defendants' motion for summary judgment as to the early-purchasing Old Banc One shareholders' Section 12 claims.

B. Early-Purchasing Shareholders' Section 15 Claims

Section 15 permits "controlling persons" of an entity to be held jointly and severally liable with, and to the same extent as, the entity they control for any proven Section 12 violations that the entity committed. 15 U.S.C. § 77o (2003). Because the early-purchasing shareholders do not have a valid claim under Section 12, their Section 15 claim fails as well. It is clear that a Section 15 claim cannot survive without an underlying Section 12 claim. *In re Harmonic Inc. Secs. Litig.*, 163 F. Supp. 2d 1079, 1090 (N.D. Cal. 2001). Therefore, Defendants' motion for summary judgment is granted on the early-purchasing shareholders' Section 15 claims.

C. Late-Purchasing Shareholders' Section 12 Claims

The late-purchasing shareholders--the shareholders who purchased their stock after the August 5, 1998 Prospectus was disseminated--would have been more likely to vote against the merger had the First USA information been disclosed before the merger, and the First USA information was therefore "material" to the late-purchasing shareholders under Section 12.

Taking the Old Banc One shareholders' allegations about the materially fraudulent nature of the First USA unit misstatements as true, the late-purchasing Old Banc One shareholders purchased Old Banc One securities at an artificially inflated stock price during the pre-merger period in which Old Banc One allegedly misrepresented First USA's results in the Prospectus. They purchased their stock based on the statements made in the Prospectus as to the strength and growth of First USA. News later comes out that earnings would be down 7-8% from current market estimates, based entirely on changes in the growth and margin prospects for First USA.

11

Thus, the alleged misrepresentations are material to these shareholders, and they have obviously been damaged if the above facts are proven to be true.

As opposed to early-purchasing Old Banc One shareholders, late-purchasing shareholders suffered an actual loss of the type meant to be protected under Section 12. The late-purchasing shareholders did not fully recover their loss after the merger. Late-purchasing Old Banc One shareholders were worse off financially for the alleged First USA misstatements having been disclosed after the merger instead of before.

For all of the foregoing reasons, we deny Defendants' motion for summary judgment as to the late-purchasing Old Banc One shareholders' Section 12 and 15 claims.

## CONCLUSION

For the foregoing reasons, we grant in part and deny in part the summary judgment motion filed by Defendants. (# 105-1). We grant Defendants' motion for summary judgment with respect to the Section 12 claims of the early-purchasing Old Banc One shareholders (shareholders who purchased their Old Banc One stock on or before August 5, 1998). Defendants' motion for summary judgment on the Old Banc One shareholders' Section 15 claim is also granted with respect to the early-purchasing shareholders. We deny Defendants' motion with respect to the late-purchasing Old Banc One shareholders (shareholders who purchased their Old Banc One stock after August 5, 1998).

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: April 29, 2004